FILED

2004 JAN 23 P 5: 06

U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICIA CLARKE | : | |
| | : | |
| VS. | : | NO. 3:00CV01622 (PCD) |
| | : | |
| WILLIAM J. HENDERSON, | : | |
| POSTMASTER GENERAL | : | JANUARY 23, 2004 |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S REVISED COMPLIANCE WITH PART A**
**OF TRIAL PREPARATION ORDER**

## I. CLAIMS OF FACT PROPOSED FOR STIPULATION AS UNDISPUTED

1. The plaintiff is an adult citizen of the United States residing in Wallingford, Connecticut.

**Response: Defendant agrees.**

2. The plaintiff was born on December 10, 1953.

**Response: Defendant agrees.**

3. She is five feet tall and a female.

**Response: Defendant agrees.**

4. She suffers from a disability, that is, when she was hired by the defendant she suffered, and was known to the defendant to be suffering, from Raynaud's Phenomenon, a vascular disorder with undifferentiated connective tissue disease. Raynaud's

Phenomenon constricts the body's vascular system causing swelling, discoloration and pain in the extremities. It is aggravated by cold temperatures and stress. (Plaintiff, James Clarke, Ex. 39)

**Response: Defendant disagrees that Plaintiff suffers from a disability as a result of Reynaud's disease or other condition. (Witnesses: Dr. Philip Luchini; Dr. Schoen; Dr. Micha Abeles; Dr. James McVeety; Douglas Millett; Plaintiff; James Clarke) (Exhibits: Deposition of Plaintiff; Deposition of James Clarke; Videotapes of Plaintiff during the period of August 4, 2000 to February 2001)**

5. While employed by the defendant, as a result of her employment, she suffered permanent injury to her shoulders, arms and wrists (carpal tunnel syndrome); her expenses for diagnosis and treatment have been reimbursed by the Federal Office of Worker's Compensation (OWCP) as of 1995. (Plaintiff, Ex. 36)

**Response: Defendant agrees that Plaintiff's expenses for diagnosis and treatment have been reimbursed by the Federal Office of Worker's Compensation as of 1995; Defendant disagrees that as a result of Plaintiff's employment, she suffered permanent injury to her shoulders, arms and wrists (carpal tunnel syndrome). (Witnesses: Dr. Philip Luchini; Dr. Micha**

**Abeles; Douglas Millett; Plaintiff; James Clarke) (Exhibits: Deposition of Plaintiff; Deposition of James Clarke; Videotapes of Plaintiff during the period of August 4, 2000 to February 2001)**

6. The plaintiff has also been diagnosed with cervical strain with degenerative changes and arthritis as of 1995. (Ex. 36)

**Response: Defendant agrees that Plaintiff was diagnosed with a cervical sprain; Defendant disagrees that Plaintiff suffers from degenerative changes and arthritis as of 1995 or leaves Plaintiff to her proof of this condition.**

7. The defendant, through his agents, servants and employees, perceived the plaintiff as being disabled in the manner described above as early as 1995. (Roy Rotnofsky, Richard Uluski, Richard Chandler, Sal Friello, Donald D'Andrea, Richard Gattison)

**Response: Defendant disagrees that the Defendant, through his agents, servants and employees, perceived the plaintiff as being disabled in the manner described above as early as 1995. (Witnesses: Roy Rotnofsky; Gerald Ahern; Richard Uluski; Richard Chandler)**

8. The plaintiff was hired in 1984 as a Level 5/6 Clerk and placed on Tour 1, with work hours from 11:00 p.m. to 7:30 a.m. (Plaintiff)

**Response: Defendant agrees that plaintiff was hired in 1984 as a Level 5/6 Clerk and placed on Tour 1, with work hours from 11:00 p.m. to 7:30 a.m.**

9. Her duties were to work in a manual mail case (with a height of six feet), work a keyboard, and collect mail on a machine (also over six feet in height) called a Letter Sorting Machine. All of these were highly repetitious actions with no ergonomic alterations such as keyboard rests. (Plaintiff, Richard Chandler)

**Response: Defendant agrees that Plaintiff's duties were to work in a manual mail case, work a keyboard and with mail sorting machines; Defendant disagrees with the description of the heights of the machines and disagrees that these actions were "all highly repetitious with no ergonomic alterations such as keyboard rests". (Witnesses: Roy Rotnofsky; Richard Chandler)**

10. In February of 1988, the plaintiff changed her schedule to a day shift and a new position as a Level 5 clerk sorting mail in the manual cases. (Plaintiff)

**Response: Defendant disagrees that Plaintiff was a "Level 5 Clerk" and believes she was a "Level 4 Clerk".**

11. In 1993, she was diagnosed with degeneration of two discs in her neck, an impingement of her right shoulder with trapezial strain, and bilateral carpal tunnel syndrome, all the result of repetitious job duties and being required to reach far beyond her body's capacity over a long period of time. It was determined that these physical symptoms were work-related. The respondent's agents accepted these determinations. (Plaintiff, Dr. Schoen)

**Response: Defendant denies that it "accepted these determinations". Defendant leaves Plaintiff to her proof of her medical condition in 1993 and later.**

12. The defendant was notified at that time that the plaintiff's disability required that she not use her right upper extremities in a reaching or repetitive manner and that she not be required to continually grasp or use both her hands in such a repetitive action, and that a manual mail-sorting position would violate these medical restrictions. (Plaintiff, Dr. Schoen, Dr. Luchini)

**Response: The Defendant agrees that in 1996 it was notified of a restriction in reaching, lifting, and repetitive use of her right upper extremity, and lighter duty was requested.**

13. In 1993, the plaintiff was designated as a "limited duty employee," meaning a postal employee with job-related injuries. (Plaintiff, Richard Chandler. Sal Friello, Donald D'Andrea)

**Response: Defendant agrees that as of March 1995, Plaintiff was designated a "limited duty employee".**

14. In 1995, all window coverage positions, including the plaintiff's were abolished in the New Haven office because of a relocation of the facility to Wallingford. (Plaintiff, Elizabeth Baumgartner)

**Response: Defendant agrees that in 1995, all window coverage positions, including the plaintiff's were abolished in the New Haven office because of a relocation of the facility to Wallingford.**

15. On September 12, 1996, the plaintiff was forced to undergo surgery upon her right shoulder for the reasons noted above. Complications from that surgery kept her out of work until March of 1997. (Plaintiff)

**Response: Defendant agrees that Plaintiff had said surgery. Defendant disagrees that it was "forced".**

16. On August 7, 1998, the plaintiff was notified in writing by an agent of the defendant that her employment was terminated effective at

the close of business on September 12, 1998. The stated reason was that she suffered a disability, had been offered a reasonable accommodation, and had refused same. (Ex. 36, p. 27)

**Response: Defendant agrees that Plaintiff was notified in writing by an agent of the defendant that her employment was terminated effective at the close of business on September 12, 1998. Defendant disagrees that the stated reason was that "she suffered a disability, had been offered a reasonable accommodation, and had refused same." (Exhibit: Letter to Plaintiff dated August 7, 1998 signed by Joe Rosa; ROI '98; Exhibit 3)**

## II. PROPOSED FINDINGS OF FACT

1. After the move to Wallingford, the plaintiff was given assignments which were against her medical restrictions and was required to perform those assignments. She was accommodated by being assigned a 45-inch-high manual mail case, but was required to continue to perform repetitive movements which had been prohibited expressly. In addition, she was required to use a broken and unadjustable chair, requiring her to continue to reach up to sort mail. (Plaintiff, James Clarke, Richard Chandler)

**Response: Defendant agrees that Plaintiff was accommodated by**

**being assigned a mail case of modified height. Defendant disagrees that after the move to Wallingford, Plaintiff was given assignments which were "against her medical restrictions" and was "required to perform these assignments". Defendant disagrees that Plaintiff was required to continue to perform repetitive movements which had been expressly prohibited. Defendant disagrees that "Plaintiff was required to use a broken and unadjustable chair, requiring her to continue to reach up to sort mail". (Witnesses: Roy Rotnofsky; Richard Chandler; Richard Uluski; Gerald Ahern)**

2. After the move to Wallingford, the plaintiff repeatedly complained to management concerning the failure to accommodate her disabilities, but her complaints were ignored until March 20, 1996, when she was provided a new chair. (Plaintiff, James Clarke, Richard Chandler)

**Response: Defendant disagrees that after the move to Wallingford, the plaintiff repeatedly complained to management concerning the failure to accommodate her disabilities, and that her complaints were ignored until March 20, 1996, when she was provided a new chair. (Witnesses: Roy Rotnofsky; Richard Chandler; Richard Uluski; Gerald Ahern)**

3. In April, 1997, after her shoulder surgery, the plaintiff's orthopedic surgeon, Dr. Phillip Luccini, notified the defendant that a proposed light duty position required the plaintiff to lift more than 20 lbs. (Cartons of mail received by truck and left at the loading dock of the facility). (Ex. 25)

**Response: Defendant disagrees that this communication was received. (Witness: Carmen Strickland)**

4. On several occasions during her employment with defendant, the plaintiff was the victim of sexual harassment by a supervisor. She filed at least one formal EEOC complaint regarding this matter under EEOC Number 1J-0015-89, and it was determined that indeed the plaintiff had been so harassed. She was promised that she would not in the future be subjected to a hostile work environment. (Plaintiff, Donald D'Andrea)

**Response: Defendant disagrees with the above. Moreover, this issue is not properly before the court because the court lacks jurisdiction to hear this claim. Plaintiff failed to exhaust her administrative remedies with regard to this claim of sexual harassment. (Exhibit: Defendant's proposed Exhibit D) (Witness: Plaintiff)**

5. Plaintiff was denied secretarial positions for which she was qualified after she was approved for return to work with permanent restrictions in April, 1997. Such positions would have fully accommodated the plaintiff's disabilities, but she was not offered any position, although her EEOC complaints were pending, and in fact these positions were given to a younger female employees. (Plaintiff, James Clarke, Sal Friello, Helen Wojciechowski, Elizabeth Baumgartner, David Peterson)

**Response: Defendant disagrees that Plaintiff was denied and "not offered" a position for which she was qualified after she was approved for return to work with permanent restrictions in April, 1997. Defendant denies that after April 1997 positions for which Plaintiff applied were given to younger female employees. (Witnesses: Roy Rotnofsky; Richard Chandler; Richard Uluski; Gerald Ahern; Carmen Strickland; Plaintiff)**

## III. CLAIMS OF LAW

1. By failing to offer the plaintiff a position which accommodated her disability after April, 1997, the defendant violated her rights under 42 U. S. C. §2000e et seq., §501 of the Rehabilitation Act of 1973, as amended, and the Americans with Disabilities Act, 42 U.S.C. §§

12111, et seq. [Heilweil v. Mount Sinai Hospital, 32 F. 3d 718, 721 (2d Cir. 1994, cert. den., 513 U. S. 1147 (1995)]

**Response: Defendant disagrees with the above Claim of Law. (See Defendant's Claim of Law 1 & 2). Moreover, not withstanding that Plaintiff is not disabled, a position which accommodated Plaintiff's medical restrictions was offered to her on April 4, 1997.**

2. By failing to offer the plaintiff a secretary position which she had held on a temporary basis in 1996, the defendant discriminated against the plaintiff on the basis of age when it filled several such positions with female employees who were under the age of 40. Banks v. Potter, 253 F. Supp. 2d. 335 (2003)

**Response: Defendant disagrees with this Claim of Law. (Witness: Roy Rotnofsky)**

3. Defendant treated the plaintiff differently from other employees because she had work related disabilities and because she had filed administrative complaints during her tenure with the agency and because she had made repeated requests for accommodation after she was designated as an employee with a work-related disability in 1993. In this manner, the defendant denied the plaintiff

equal protection under the law. Board of Trustees of University of Alabama v. Garrett, 531 U. S. 356 (2001)

**Response: Defendant disagrees with this Claim of Law. The claim of denial of equal protection as the result of alleged disparate treatment by agents of Defendant is precluded by Title VII, and/or the ADEA or Rehabilitation Act. These are the exclusive, pre-emptive remedies for claims of discrimination in federal employment. Tillet v. Carlin, 637 F. Supp. 245, 249 (D. Conn. 1985); Brown v. GSA, 425 U.S. 820, 829 (1976).**

**IV. PROPOSED EXHIBITS (Defendant notes it has not seen many of the vaguely identified exhibits below and reserves the right to object upon examination at the appropriate time.)**

1. Authorization from Dr. Phillip Luchini for plaintiff's surgery to Bertha Stirling, August 28, 1994.
2. Memorandum from Roy Rotnofsky to Patricia Clarke, June 29, 1995 re: status as light or limited duty job classification.
3. Letter from Patricia Clarke to Diana D. Marquis, April 11, 1995.

**Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

4. Letter from Bernard McNamara to Patricia Clarke, May 16, 1995.
5. Letter from Patricia Clarke to Bernard McNamara, May 21, 1995.

**Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

6. Letter from Patricia Clarke to Bernard McNamara, June 14, 1995.**Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

7. Letter from Joanne Manginelli to whom it may concern, June 14, 1995.**Objection. Hearsay, Relevancy.**

7. EEO Complaint, 3/13/96, failure of Rotnofsky to accommodate disability. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

8. Letter from Bernard McNamara to Patricia Clarke, June 16, 1995.

9. Letter from Patricia Clarke to Bernard McNamara, June 18, 1995. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

10. Letter from Patricia Clarke to Richard Uluski, September 17, 1995. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

11. U.S. Department of Labor Claim for Continuing Compensation on Account of Disability, September 26, 1996. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

12. U.S. Department of Labor Attending Physician's Supplemental Report, Dr. Phillip Luchini, September 27, 1996.

13. Medical record, Dr Phillip Luchini, September 24, 1996. **Objection. Vague.**

14. U.S. Department of Labor Claim for Continuing Compensation on Account of Disability, October 15, 1996. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

15. U.S. Department of Labor Attending Physician's Supplemental Report, Dr. Phillip Luchini, October 9, 1996.

16. Letter from Patricia Clarke to Bertha Stirling, October 15, 1996. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

17. Letter from Patricia Clarke to Bertha Stirling, February 10, 1997. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

18. Memo from USPS Injury Compensation to Roy Rotnofsky, February 28, 1997.

19. Letter from Patricia Clarke to Bertha Stirling, March 18, 1997. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

20. Letter from Patricia Clarke to Gerry Ahern, March 20, 1997. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

21. Letter from Patricia Clarke to Bertha Stirling, March 21, 1997.

**Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

22. U.S Department of Labor, Claim for Continuing Compensation, March 21 1997. **Objection. Hearsay, Relevancy. F.R.E. 803,**

**401.**

23. Fax memo from James Surpenant, USPS- In plant support to Plant Mgr., April 3, 1997 re: Light Duty Assignment option at Wallingford.

24. Letter with job offer from Bertha Stirling, U.S Department of Labor to Patricia Clarke, April 4, 1997.

25. Letter from Charles Kamilewicz, United States Postal Service to Dr. Philip Luchini, April 4, 1997, with April 25, 1997 date stamp receipt of Dr. Luchini response modifying conditions of employment prior to acceptance of offer.

26. Letter from Dr. Phillip Luchini to Patricia Clarke, re: change of shift, April 9, 1997.

27. Letter from Patricia Clarke to Bertha Stirling, April 17, 1997. **Objection. Hearsay, Relevancy. F.R.E. 803, 401.**

28. Letter from Bertha Stirling to Patricia Clarke RE: Occupational disease claim acceptance, May 7, 1997. **Objection. Relevancy. F.R.E. 401.**

29. Letter from Bertha Stirling to Patricia Clarke RE: Compensation claim under the Federal Employees' Compensation Act, May 7,

1997. **Relevancy. F.R.E. 401.**

30. Letter from Patricia Clarke to Charles Kamilewicz, May 8, 1997. **Objection. Hearsay, Relevancy. F.R.E. 803, 401**

31. Letter form Charles Kamilewicz to Patricia Clarke, June 3, 1997.

32. Letter from Patricia Clarke to Charles Kamilewicz, June 5, 1997. **Objection. Hearsay, Relevancy. F.R.E. 803, 401**

33. Letter from Patricia Clarke to Paula Berg, June 9, 1997. **Objection. Hearsay, Relevancy. F.R.E. 803, 401**

34. EEO complaint, June 21, 1997, re: disability discrimination for failure to offer suitable position to return to work. **Objection. Hearsay, Relevancy. F.R.E. 803, 401**

35. Applicant's Statement of Disability, September 23, 1999. **Objection. Hearsay, Relevancy. F.R.E. 803, 401**

36. Award of Disability Retirement, October 15, 2001. **Objection. Relevancy. F.R.E. 401**

37. Tax Returns, 1996-2002. **Objection. Relevancy as to issue of liability. F.R.E. 401**

38. Records of Dr. Robert Dudek, Orthopedics, 5/93 - 6/94. **Objection. Vague.**